(Reap. Dec. 8388)

THE AMERICAN IMPORT CO. *v.* UNITED STATES

Entry No. 5622.

(Decided on rehearing [not published] February 2, 1955)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Chauncey E. Wilowski, William J. Vitale*, and *Samuel D. Spector*, trial attorneys), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of the values of certain paper snakes, copper and brassware, etc., imported into the United States from China and covered by an invoice, dated Peiping, China, February 28, 1948. The merchandise was appraised at invoiced unit values, plus 10 per centum, plus cases and packing. The only item in dispute is the 10 per centum, the importer contending that this represented a buying commission paid to one Chen Te Hsing, of Peiping, China, and was, consequently, nondutiable, and the defendant contending that the 10 per centum represented profit to Chen Te Hsing as the seller of the merchandise.

When the case was first called for trial at San Francisco, it was stipulated between counsel for the parties that—

\* \* \* if the Court finds that said ten per cent is not a part of dutiable value, that then the invoiced unit values, plus cases and packing, in the amount of United States dollars $36.35 represents dutiable value. (Tr. p. 2.)

The case was then continued in order to allow counsel for the plaintiff an opportunity to secure evidence from China as to the nature of the 10 per centum item.

When the case was next called for trial, counsel for the plaintiff offered in evidence an affidavit executed by one J. C. Liu of Hong Kong, and subscribed and sworn to before the vice consul of the United States at Bangkok, Thailand. No objection was made to the admission into evidence of this affidavit by counsel for the defendant, "except as to the weight to be given to it," and it was received in evidence as plaintiff's exhibit 1. Plaintiff thereupon rested.

Counsel for the defendant offered in evidence a document identified by him as a C. I. E. (Customs Information Exchange) report "which has attached thereto the report of Examiner Bornstein of New York on Customs Form 6431, dated September 17, 1948." Objection to said offer was made on two grounds: First, that the offered document was a copy, not certified as provided by the statute, 28 U. S. C. § 2633; and, second, that it was not a "report," within the meaning of the term as used in the statute permitting admission in evidence of reports of certain customs officers.

At the trial, the writer sustained the objection thus made, and the document was marked defendant's collective exhibit A for identification upon motion of counsel for the defendant. Examination of the document shows that it bears on the reverse side of two of the three sheets of which it is comprised a certification which might be construed as covering the entire document. Moreover, part of the document appears to be in the nature of a report of the director of the Customs Information Exchange, and the other part is headed "Report of Appraising Officer," both parts being presumably within the statutory exception to the hearsay rule permitting the receipt in

evidence of reports of "appraisers, assistant appraisers, examiners, and other officers of the Government." The ruling made at the time of trial is, therefore, reversed, and the document is received in evidence and marked "Defendant's Collective Exhibit A."

At a subsequent hearing in New York, to which port the case was transferred at the request of counsel for the defendant, Government counsel appeared and requested—

* * * that the stipulation entered into between counsel at the commencement of the trial be vacated on the grounds that the same was entered into without knowledge in California of the actual facts in the matter.

The "actual facts in the matter," as related by Government counsel, appear to refer to some agreement between some unnamed importers on the east coast of the United States and some unnamed customs officers—

* * * that all these entries of Chen Te Hsing and other Chinese commission-aires were to be changed to a purchaser and seller status, * * *

apparently in order to avoid certain currency complications.

Counsel for the plaintiff refused to withdraw the stipulation, pointing out that there was no suggestion on the part of the Government that the plaintiff herein was a party to the so-called agreement spoken of by counsel for the Government.

Counsel for the defendant thereupon claimed that the stipulation had been entered into under a mistake of fact, and offered to present "evidence by the person who entered into this agreement, or the reason for it" in the person of the examiner at New York "who will testify as to what the arrangements were."

Corpus Juris Secundum, volume 83, page 84, under the article on "Stipulations" and the subheading in § 30 "Rescission, Withdrawal, Abrogation, Waiver, or Abandonment," states that—

* * * the right to repudiate a stipulation is recognized where it is shown that it was inadvertently or mistakenly made, provided notice is given to the opposite party in sufficient time to prevent prejudice.

On the same subject, American Jurisprudence, volume 50, page 614, under the subheading in § 14 "Relief from Stipulations," says—

* * * Parties will not be relieved from stipulations in the absence of a clear showing that the fact or facts stipulated are untrue, and then only when the application for such relief is seasonably made and good cause is shown for the granting of such relief.

Nothing was offered to show that either the Government counsel who entered into the stipulation, or the appraiser in San Francisco, upon consultation with whom Government counsel acted, ever believed that there was any mistake of facts. While the matter contained in defendant's collective exhibit A does not mention any east coast agreement, nevertheless, the gist of the so-called agreement,

i. e., that Chen Te Hsing would be considered a seller, was contained in the reports embodied therein. Those reports, on their face, show that they were in the hands of the San Francisco appraiser and examiner at the time the stipulation was entered into. How the existence of the so-called agreement could affect the issues at all was not brought out. It might affect the strategic *reasons* for entering into the stipulation, but it could not affect the truth of the *facts* stipulated.

What seems to have been lost sight of by counsel for the defendant is that the question is not whether, in fact, some agreement existed between east coast importers and customs officers to treat Chen Te Hsing's shipments in a certain way, but whether, in fact, Chen Te Hsing was a commissionaire or a seller. It seems to be clear that that was the issue understood by counsel for the parties at the time the stipulation was entered into, and that is the issue that confronts the court today.

Quite aside from the fact that due or adequate notice of the request to withdraw the stipulation was not given counsel for the plaintiff, I am convinced that there was no mistake of fact involved in the stipulation which would warrant vacating the same. The order denying the request to withdraw the stipulation is, therefore, adhered to, notwithstanding certain language uttered by counsel for the Government, indicating a purpose to frustrate the effect of any decision made by the court in this case, as follows:

* * * and I say the reason I made this motion, and I apprised Mr. Tuttle of it this morning, this is only one case involving about thirty dollars. It is not going to dispose of the issue. I am more interested in disposing of it as an issue than go back for another case which has the same thing, *and I say now that no other case is going to be bound by any decision* in this case, because we won't offer any proof if we cannot be relieved of the stipulation, and try the issue as it should be tried. We will submit on the record and let this case go by the boards. We are not interested in winning or losing a case. I don't think Mr. Tuttle is interested in winning or losing thirty dollars, and maybe there is four dollars involved in duty. They have a number of other cases, and it is for the purpose of getting the whole thing spread before the court that is the purpose of my motion. [Italics added.] (Tr. p. 19.)

Proceeding, therefore, to a determination of the case on the record before me, I, therefore, find that the issue has been limited by the stipulation to the question of whether the 10 per centum addition made by the appraiser to the invoiced and entered unit values is part of the correct value of the merchandise, that is to say, whether it is a buying commission, as contended for by the plaintiff, or a part of the selling price, as contended for by the defendant.

As hereinbefore stated, the evidence offered on behalf of the plaintiff consists of the affidavit of J. C. Liu of Hong Kong, who identified himself as having been the general manager of the Peiping establishment of the firm of Chen Te Hsing during the years 1947 to 1949,

inclusive, during which time the merchandise at bar was exported. While the affiant was not in possession of records which would permit him to verify details, he stated that it was the *invariable* practice of the firm, carried out under his direction, to handle operations with regard to merchandise, known as Chinese gift wares, such as that here in issue on a purchasing agency basis. The affidavit definitely negatives the proposition that Chen Te Hsing was a seller of the merchandise and establishes that he acted solely as a commissionaire.

In the brief filed on behalf of the defendant, the affidavit is attacked on the ground its statements are hearsay and that it states conclusions, without the presence of any competent facts in support thereof.

Inasmuch as Mr. Liu identifies himself as the general manager of the firm, under whose direction the invariable practice with respect to Chinese gift wares was carried out, it can hardly be said with any degree of validity that the statements therein contained are hearsay. His statements were based upon personal knowledge of the facts. Far from merely stating conclusions, the affiant detailed the method of Chen Te Hsing's operations with respect to Chinese gift wares as follows:

With regard to Chinese gift wares, including the merchandise described above, Chen Te Hsing did not stock or sell such goods; it placed orders for such merchandise with its numerous suppliers only after having received an order from the foreign client, and in the exact quantity ordered by the foreign client. At certain times shipments made to the foreign client did not correspond exactly to the quantity ordered because of rejections during the inspection of the merchandise by Chen Te Hsing. To the best of my recollection, this was the case in the above transaction with The American Import Company, although in the absence of my records, which are not available to me in Hong Kong, it is impossible for me to verify details. Chen Te Hsing did not decide the prices to be paid by the foreign clients for this type of merchandise. If the client specified price limits, the firm sought to buy at prices within those limits; otherwise it reported the current market prices and asked the client to confirm his acceptance of those prices. Importers in general, and The American Import Company in the above transaction, could have purchased directly from the Chinese suppliers without paying any purchasing commission to Chen Te Hsing, but usually this was an impractical procedure because of the ignorance of these small suppliers as to documentation and shipping requirements and because of the necessity of inspecting the merchandise prior to accepting it.

In general, Chen Te Hsing performed the following services for its foreign clients in return for its commission of 10 per cent for the purchase of Chinese gift wares, and this was necessarily true of the transaction covered by consular invoice 329:

1) Negotiated with the suppliers by calling on them or having them call at its office with sample.

2) Took delivery of the merchandise, inspected it, and packed it for exportation.

3) Attended to all the formalities and charges connected with placing the shipment aboard ship and exporting it from China.

Besides these ordinary and well-understood services, there were numerous others which the foreign client would have been unable to undertake himself because of difficulties due to language, locating sources of supply, negotiating with a large number of small suppliers, exactions of minor officials, and various other local obstacles that only a well-versed local firm could overcome.

All of the foregoing are evidentiary facts, and they compel the conclusion that Chen Te Hsing acted as a commissionaire and not as a seller. See *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007, and *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T. D. 40958. I, therefore, find that under the issue, as limited by the stipulation, plaintiff has made out a *prima facie* case in its favor.

The *prima facie* proof thus established by the evidence offered by the plaintiff is in no wise injured by the evidence contained in defendant's collective exhibit A. The statements contained therein are shown, on their face, to be based upon conjecture and facts, assumed without evidentiary basis. For example, the report of the director of the Customs Information Exchange states:

As the Chinese Government does not permit foreign currency within the borders of China it must be assumed that Chen Te Hsing purchased the merchandise from the manufacturer in Chinese currency.

Other than the foregoing statement by one who does not show the basis for his knowledge, there is no evidence that "the Chinese Government does not permit foreign currency within the borders of China." The assumption that follows in the sentence, therefore, is not necessarily valid.

The report continues:

Since Chen Te Hsing sold the importer in U. S. dollars, he is considered as having acted in the capacity of seller. The so-called buying commission of 10% is considered part of the seller's profit and, therefore part of statutory export value.

There is nothing to show that Chen Te Hsing "sold the importer" anything, and the statement that "he is considered as having acted in the capacity of seller" is not the slightest evidence that he actually was a seller. As a matter of fact, the inference of the statement is that Chen Te Hsing was actually not a seller, but would be "considered" so.

The attached report of Customs Examiner Bornstein is of the same nature and to the same effect as the report of the director of the Customs Information Exchange.

From what has been said with respect to defendant's collective exhibit A, it is not intended to infer that such reports are valueless. It is well known that reports of customs officers and of the Customs Information Exchange are excellent aids in the executive administration of the customs and revenue laws. There may be, and often is,

however, a considerable difference between the value of such reports as an aid to the administrative operations of customs and as evidence offered under the statutory permission for their receipt in judicial proceedings. The statute merely permits an exception to the hearsay rule—it does not operate to confer upon such reports a probative quality which they might not otherwise possess. A statement which, in essence, is both hearsay and an unsupported conclusion of fact or law is as much an unsupported conclusion of fact or law when the hearsay rule is relaxed to permit its receipt in evidence. The statements contained in defendant's collective exhibit A are not statements of evidentiary fact; they are assumptions and conclusions without evidentiary basis, and, as such, are no proof of the facts therein asserted.

In the brief filed on behalf of the defendant, it is contended that the stipulation did not so limit the issue as to relieve the plaintiff of the obligation to establish the correct basis of value under section 402 of the Tariff Act of 1930. In my view, the stipulation, limiting the issue to the question of the correctness of the inclusion of the 10 per centum item as part of the value of the merchandise, had the effect of singling out only that one item of the appraisement for challenge. The issue as to the correct basis of value was not challenged and the plaintiff had no burden to establish it. We must assume that the appraiser used one of the bases of value specified in section 402 in making his return of value, and whatever that basis was—apparently it was export value—the plaintiff and the defendant have accepted it, and it is not an issue in this case. See *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 C. C. P. A. (Customs) 243, C. A. D. 538, wherein our appellate court, in an analogous case, said:

* * * we have ruled that the challenging of one item of an appraisement does not destroy the presumption of correctness attaching to all the other items of the appraisement. *United States* v. *Fritzsche Bros., Inc., supra; United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241. *Therefore, in proving that the percentage additions made by the appraiser were wrong appellees did not destroy the remainder of the appraisement, the invoiced unit value, which is presumed to be correct.* * * * [Italics added.]

So, here, the plaintiff challenged only the correctness of the inclusion of the 10 per centum item in the value of the goods, and the defendant, by the stipulation, agreed that the entered value was otherwise correct. The correctness of the 10 per centum addition was, therefore, the sole issue in the case.

Upon the entire record before me, I find as facts:

1. That the merchandise consisted of various so-called Chinese gift wares, such as paper snakes, copper and brass ware, etc., exported from China on or about March 12, 1948.

2. That the only item of the appraisement challenged and the issue to which this case is limited is the correctness of the inclusion in the appraiser's return of value of an item of 10 per centum.

3. That the said 10 per centum item represented a buying commission paid to the shipper, Chen Te Hsing, as commissionaire.

4. That the market value, or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was, as to each item, the invoiced unit value, plus cases and packing.

5. That, if such or similar merchandise was, at the time of exportation of such merchandise, freely offered for sale for home consumption in China, the market value or price was no higher than as stated in finding No. 4.

I conclude as matters of law:

I. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the correct basis of value for the merchandise at bar, and

II. That such value was as stated in finding No. 4.