(Reap. Dec. 8789)

D. N. & E. Walter & Co. v. United States

Entry No. 13026.

(Decided April 18, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Samuel D. Spector*, trial attorneys), for the defendant.

Mollison, Judge: This is an appeal for reappraisement filed under the provisions of section 501, as amended, of the Tariff Act of 1930 against the decision of the appraiser as to values of certain bamboo blind and shading material, exported from Japan on or about February 9, 1955.

The merchandise was appraised at the invoiced unit values which included, in addition to packing charges, certain additional charges for transportation, storage, and insurance, which were incident to transporting the merchandise from the factory of the manufacturer and placing the same free on board of the exporting vessel at Kobe, Japan, all of the latter charges being the so-called "inland" charges. Plaintiff claims that the correct value of the merchandise is the invoiced unit values, less all or part of the said inland charges.

No question arises as to foreign value, as defined in section 402 (c), as amended, of the Tariff Act of 1930, with respect either to such or similar merchandise, the parties evidently being in agreement that no such value existed. Plaintiff contends that the proper basis of value is export value, as defined in section 402 (d), as amended, of the Tariff Act of 1930 of "such" merchandise.

Plaintiff's primary contention, in this regard, is that export value is represented by the prices at which the manufacturer of the instant merchandise, Inoue Seiren Shokai (hereinafter referred to as Seiren),

sold such merchandise to D. Nagata Co., Ltd. (hereinafter referred to as Nagata), the export dealer in Japan, who sold to the plaintiff-importer (hereinafter referred to as Walter).

From the affidavit of Katsuharu Inoue, proprietor of Seiren, offered and received in evidence as plaintiff's exhibit 5, it clearly appears that, at the time of exportation of the instant merchandise, Seiren "made no sales or offers for sale to any other purchaser [than Nagata]." The explanation of this fact is given by the affiant Inoue as follows:

> No contract existed between us and Nagata binding us to manufacture exclusively for it or to sell exclusively to it. However, we found it to be satisfactory business to deal with one reliable client who could take our whole production, instead of with a variety of clients of less certain standing and dependability. * * *

It is the opinion of the writer that the admitted failure to offer its merchandise to other buyers in the market prevents Seiren's prices from being acceptable as representing export value. As was said by the writer in his opinion in the case of *D. N. & E. Walter & Co.* v. *United States*, 38 Cust. Ct. 634, Reap. Dec. 8790, reappraisement No. 265189-A, decided concurrently herewith:

> The statute, section 402 (d), *supra*, calls for "the price * * * at which such or similar merchandise is freely offered for sale to all purchasers," that is to say, it contemplates that offers will be made to "all purchasers," i. e., all those who cared to buy such goods in wholesale quantities in the market (*United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308). Such offers to all who might care to buy, of course, could conceivably result in the sale of the entire available quantity to one purchaser, but it seems clear that to be within the terms of the statute there must be an offer to the buying public, no matter what the result of the offer may be.

Plaintiff alternatively contends that export value is represented by Nagata's prices to Walter and notes that an agreement, which had formerly been in existence between Nagata and Walter, under which the former bound itself not to make any offers of merchandise such as that involved to other purchasers than the latter, had at the time of exportation of the instant merchandise been abrogated by both parties.

In the evidence offered by the plaintiff, there is nothing to show that Nagata's prices to Walter were prices at which the merchandise was freely offered to all purchasers. However, inasmuch as the appraiser accepted the unit prices at which Nagata invoiced the merchandise to Walter, as representing export value of such merchandise, he must have, as a necessary determination entering into the same, found that Nagata freely offered such merchandise to all purchasers. Whether the merchandise was "freely offered for sale to all purchasers" is, therefore, not in issue at Nagata's price level. The question that remains, however, is the determination of whether the prices at which such merchandise was freely offered included

costs, charges, and expenses not contemplated by the statute to be included as part of the statutory value of imported merchandise.

Inasmuch as both plaintiff and defendant rely on Nagata's prices to Walter, and Nagata's place of business was in Kobe, it would appear that there is no question but that Kobe was a principal market in Japan for the offer for sale of such merchandise for exportation to the United States. Consequently, the cost of transporting the merchandise from Amanosan, where Seiren's factory was located, to Kobe is properly part of the export value of the merchandise. This follows from the fact that the export value statute contemplates a value for merchandise when located in the principal market, and charges which accrue up to that point are properly part of the value of the merchandise. See *Albert Mottola, etc.* v. *United States*, 38 Cust. Ct. 583, Reap. Dec. 8738.

Except for the item of packing, it clearly appears from plaintiff's exhibit 4, the affidavit of Mitsuro Nagata, executive director of D. Nagata Co., Ltd., that all of the "inland" charges, including storage, hauling, insurance, and lighterage charges, arose after the merchandise was located in Kobe, packed ready for shipment to the United States. Under the principle of the *Mottola* decision, they are not properly a part of the value of the merchandise for duty purposes.

The amounts and nature of those charges, as shown by the said affidavit, are as follows:

Storage: Keeping the goods in Kobe customs warehouse until laden aboard ship, $18.87.

Hauling: Cartage from Nagata's warehouse to lighter, $20.13.

Insurance: Covering goods while in transit from customs warehouse to on board, $5.29.

Lighterage: Transporting the goods by lighter to alongside vessel and loading on board, $246.56.

The affidavit also lists certain miscellaneous charges, totaling $5.89, but counsel for the plaintiff evidently does not contend that these are properly excludable from export value, inasmuch as they do not appear in the findings of fact and conclusions of law proposed on behalf of the plaintiff. They will, accordingly, be considered as not in controversy.

Upon the entire record before me, I find as facts:

(1) That the imported merchandise consists of bamboo blind and shading material exported from Japan on or about February 9, 1955.

(2) That on or about the date of exportation neither such nor similar merchandise was freely offered for sale for home consumption in Japan.

(3) That on or about the date of exportation of the merchandise under appraisement Kobe, Japan, was a principal market for the offer and sale of such merchandise for exportation to the United States.

(4) That the prices, at the time of exportation of the said merchandise, at which such merchandise was freely offered for sale to all purchasers in Kobe, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the appraised values, less the following items: Storage, $18.78; hauling, $20.13; insurance $5.29, and lighterage, $246.56.

I conclude as matter of law:

(1) That export value, as defined in section 402 (d), Tariff Act of 1930, as amended, is the proper basis of value for the merchandise involved, and

(2) that such export value is as set forth in finding of fact No. 4 above.