(Reap. Dec. 8790)

D. N. & E. WALTER & Co. *v.* UNITED STATES

Entry No. 14236.

(Order dated April 18, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Samuel D. Spector*, trial attorneys), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of the values of certain bamboo shade material, exported from Japan on or about June 1, 1952. The merchandise was entered under so-called duress under section 503 (b) of the Tariff Act of 1930, as then in force and effect (the section was subsequently amended by the Customs Simplification Act of 1953, 67 Stat. 518), at the invoiced

unit prices, which included all costs and charges incident to placing the merchandise free on board the exporting vessel at Kobe, Japan, and was so appraised. As will be developed later, the importer claims that all or part of the costs and charges attributable to transporting, storing, and insuring the merchandise from the time it left the factory of the manufacturer to placing the same on board the exporting vessel—the so-called "inland" charges—were nondutiable and form no part of the statutory value of the merchandise.

There is evident agreement on the part of the parties that neither such nor similar merchandise was offered for sale for home consumption in Japan and that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, did not exist. Both parties contend for export value of "such" merchandise, as defined in section 402 (d) of the same act,[1] the difference in amount between them being the so-called "inland" charges.

The record shows that the merchandise at bar was manufactured by Shimizu Chikuzai Kogyo of Shingu, Japan, and that the exporter of the merchandise was D. Nagata Co., Ltd., of Kobe, a dealer in bamboo blinds and shade material. There is some evidence to show that Nagata exercised some sort of financial control over Shimizu, but it, nevertheless, appears that they were independent entities, each carrying on its own business and having the general relationship of buyer and seller.

At the time of exportation of the merchandise in question, Shimizu's entire output of bamboo material of that type was being taken by Nagata, who, in turn, was selling the entire output to the importer herein, Walter. It is one of the contentions of the plaintiff herein that the price at which Shimizu, the manufacturer, sold such material to Nagata, the export dealer, which was an ex-factory price, represented the correct export value of the merchandise at bar.

In support of this contention, plaintiff offered proof tending to show that there was no exclusive sales arrangement between Shimizu and Nagata, but that the latter's taking the entire output of the former was the result of (1) Shimizu's small manufacturing capacity and (2) the convenience or advantage to Shimizu of dealing with one instead of numerous buyers. Quite aside from other considerations, however, it clearly appears that Shimizu made no offers to sell such material to any other purchaser, and it is this salient fact that, in the view of the writer, prevents the acceptance of Shimizu's price to Nagata as representing export value.

---

[1] EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The statute, section 402 (d), *supra*, calls for "the price * * * at which such or similar merchandise is freely offered for sale to all purchasers," that is to say, it contemplates that offers will be made to "all purchasers," i. e., all those who cared to buy such goods in wholesale quantities in the market (*United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308). Such offers to all who might care to buy, of course, could conceivably result in the sale of the entire available quantity to one purchaser, but it seems clear that, to be within the terms of the statute, there must be an offer to the buying public, no matter what the result of the offer may be.

In the admitted circumstance of this case, where Shimizu made "no offers and no sales of bamboo blinds or shading to any other purchaser" (plaintiff's exhibit 3, affidavit of H. Shimizu), it is the writer's view that the sales by Shimizu to Nagata cannot be considered as the basis for export value.

At the next level of sale of such merchandise, to wit, the export dealer's, or Nagata's sales level, it would appear that the same situation existed. At the time of exportation of the merchandise here involved, there was in existence an agreement between Nagata and Walter (plaintiff's exhibit 1) which, in essence, was an exclusive buyer and seller arrangement, i. e., that Nagata would sell only to Walter, and Walter would purchase only from Nagata all of the material such as that here involved which would be manufactured during that period by Nagata or by manufacturers under Nagata's control or management. On behalf of the plaintiff, it was sought to be shown that this was considered by the parties to be merely an option arrangement, but the evidence indicates otherwise, and that the agreement was lived up to by both sides, according to the letter of the written memorandum of agreement, the substance of which is given above.

Under the circumstances, it appears that the same considerations which bar a finding of export value at the manufacturer's level of sales also bar a finding of export value based upon Nagata's sales to Walter. There simply was no offer of the merchandise for sale to all who might care to buy.

It is apparent from the record that the appraised values were based upon Nagata's sales to Walter and included all charges from Nagata's warehouse to the export vessel. It is argued on behalf of plaintiff that, in any event, it was erroneous to include those charges in the appraised value, which, it is claimed, should be reduced to that extent.

The fact is, however, that the plaintiff, in this case, undertook to challenge not only the inclusion of the "inland" charges in the value, but also the *per se* appraised value, and, in view of the proven facts, the court is in the situation of having found that the factual basis upon which the *per se* appraised value was made was erroneous, while being unable to find from the evidence or the record any other value

for the merchandise. Clearly, if Nagata's sales to Walter of such merchandise may not be taken to represent export value, it would follow that resort would have to be made to some other basis of value, e. g., the export value of similar merchandise made by other manufacturers in Japan. While the record does not establish that there were any such manufacturers, it does not negate that fact.

To recapitulate, the record establishes that there is no foreign value for such or similar merchandise and that export value may not be based upon the value of "such" merchandise (i. e., merchandise from the involved manufacturer) at either the manufacturer's or exporter's level of sales. Inasmuch as the appraised values were based upon the latter level of sales, one of the findings necessarily entering into the same, that at that level there was a free offer of the merchandise to all purchasers, is demonstrated to have been erroneous, and the presumption of correctness attaching to the same must fall. At the same time, neither party has offered any evidence which would support a finding of value under the statute.

Under the circumstances, the writer is of the opinion and holds that the interests of justice would best be served by restoring the case to the next regular San Francisco calendar of this court, in order that both parties shall have an opportunity to present evidence upon which a finding of value under one of the statutory bases may be made.

Order will issue accordingly.