(Reap. Dec. 8993)

D. C. ANDREWS & Co., INC. *v.* UNITED STATES

Entry No. 707641.
(Decided September 16, 1957)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of the value found by the appraiser for certain rubber floormats, exported from the Netherlands on or about June 30, 1951.

It is clear from the evidence offered by the parties and the briefs filed in their behalf that there is no dispute between them that the correct basis of value for the merchandise in issue is the foreign value of such merchandise, as defined in section 402 (c) of the Tariff Act of 1930, as amended. The plaintiff claims that the correct value on that basis is the entered value of Dutch florins 3.20 each, plus 4 percent turnover tax, plus packing of United States $0.02, as invoiced.

The defendant contends that the appraised value, which is expressed on the invoice as follows:

Appraised at Netherlands guilders 3.20 each plus 15% less 2% plus cost of packing US $0.02 each

represents the correct dutiable value.

By definition (Webster's New International Dictionary, 2d ed., 1945), a Netherlands guilder is a Dutch florin.

In support of its contention, the plaintiff offered in evidence the affidavit of Emile Louis Constant Schiff, who identified himself therein as the managing director of the manufacturer and exporter of the merchandise involved, N. V. Rubberfabriek Vredestein. The said affidavit was received in evidence as plaintiff's exhibit 1.

On behalf of the defendant, there were offered in evidence two reports of American vice consuls at Rotterdam, which were received as defendant's exhibits A and B.

It is clear from the contentions of the parties that the invoice charge of United States $0.02 each for packing is not in dispute. From the evidence offered by both parties, there does not seem to be any dispute but that the usual wholesale quantities in which merchandise such as that here involved was offered for sale for domestic consumption in the Netherlands were 1 to 99 pieces and that the principal market was Loosduinen.

Moreover, the evidence offered by both parties establishes that the merchandise was offered for sale on the basis of prices expressed in a pricelist, which was effective at the time of exportation. Such evidence also establishes that the price shown on the pricelist for the usual wholesale quantities of 1 to 99 pieces was D. Fl. 3.20 each. The evidence of both parties is in agreement that sales for domestic consumption in the Netherlands were subject to a turnover tax of 4 percent, but plaintiff's exhibit 1, the affidavit of Mr. Schiff, indicates that the turnover tax *was not included* in the D. Fl. 3.20 price, while the defendant's exhibit B, the report of an American vice consul is to the effect that such tax *was included* in the D. Fl. 3.20 price.

While plaintiff makes no claim for a discount from the D. Fl. 3.20 price, its evidence indicates that a "trade discount" of 2 percent was allowed on purchases of 1 to 99 pieces. Defendant's evidence is to the effect that no "trade discount" was allowed, but that a cash discount of 2 percent was granted, and, such discount, as hereinbefore noted, was allowed on appraisement.

Although, as can be seen from the foregoing, the parties are not in agreement on the question of whether the turnover tax of 4 percent was or was not included in the D. Fl. 3.20 price shown on the pricelist, or whether the cash discount of 2 percent should be deducted therefrom, they have treated the issue as involving only the question of whether or not the item of 15 percent, added by the appraiser on appraisement to the D. Fl. 3.20 price, is properly part of the correct value of the merchandise.

At pages 3–4 of the transcript, counsel for the defendant stated as follows:

I think it is fair at this time to explain to the court the issue. The issue involved here is a question of a 15 per cent addition, which the importer compelled his local retailers who bought in wholesale quantities, as a class, to pay in addition to the list price, and apparently it is this discount [sic] which the Government has added to the price on the price list, as representing the correct dutiable value.

On page 4 of the brief, filed on behalf of the plaintiff, under the caption "The Issue," the following statement is made:

It is clear that the sole issue for determination by the court is whether or not the addition of the 15 per cent is supported by substantial evidence.

Confining the issue, therefore, as the parties seem to do, to the question of the applicability of the 15 percent addition made by the appraiser to the D. Fl. 3.20 price, the evidence offered by plaintiff on the point, the affidavit of Mr. Schiff, plaintiff's exhibit 1, contains at least four statements to the effect that the prices varied only by reason of purchase quantities. After setting forth the pricelist, showing the prices for the various quantities, which pricelist also appears in defendant's exhibits A and B, the affiant states in part as follows:

The prices were solely on the basis of the quantities purchased. * * *

That all the sales in the domestic market were made on the basis of the price-list noted above * * * and such sales were made irrespective of the type or class of buyer; that all offers were made on the basis of this pricelist which was based on quantities ordered.

\*   \*   \*   \*   \*   \*   \*   \*

That the statements made on our Consular Invoice in Column 11 for merchandise sold to the Damrak Trading Co. in New York are true and correct in that they represent the prevailing home market prices at which the goods were freely offered to all purchasers for domestic consumption in the usual wholesale quantities and in the ordinary course of trade without regard to the type or class of purchaser, prices being made solely on the quantities offered as per our pricelist.

In the brief filed on behalf of the defendant, plaintiff's exhibit 1 is attacked as containing "no competent probative evidence of value," and the cases of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593, are cited, among others, with respect to the distinction between evidentiary and ultimate facts.

If the parties had not limited the issue, as they seem to have done, to the sole question of the propriety of the 15 percent addition, it is quite possible that plaintiff's exhibit 1 might be said to contain statements of ultimate fact, rather than evidentiary facts. Those statements, however, refer to matters which do not seem to be in issue.

The statements quoted above, however, as related to the issue as outlined by counsel for the parties, viz, whether retailers, as a class, were required to pay 15 percent more than the pricelist price, are statements of evidentiary fact from which the court may find the ultimate fact, i. e., whether or not such merchandise was freely

offered for sale *to all purchasers* in the usual wholesale quantities at the pricelist price of D. Fl. 3.20 each, *without the addition of 15 percent.* The court may determine from the statements in the affidavit to the effect that quantity purchased was the sole determinant of price that the merchandise was offered to all purchasers, without the addition of 15 percent. There is no issue as to whether the merchandise was "freely" offered—both sides tacitly admit this by their contentions—or of usual wholesale quantities or the pricelist price, which are shown to be the same by the evidence of both parties.

Moreover, counsel for the defendant elected to offer evidence in the form of the consular reports, defendant's exhibits A and B. Defendant's exhibit B, which antedates exhibit A, does not establish that an addition of 15 percent was added to the pricelist prices in the case of retailers, but that "about 15 percent" was added. The statements of the vice consul in exhibit B, in this regard, are as follows:

* * * If retailers wish to purchase such merchandise Vredestein increases the price as indicated on attached wholesale price list by about 15 percent in order that the wholesale market will not be disturbed.

 *  *  *  *  *  *  *

Sales are usually made to wholesalers. Prices do not depend upon the bargaining ability of the purchaser. * * *

The merchandise is sold ex-factory when sold to wholesalers and in this connection the attached price list reflects ex-factory prices. Delivery to retailers is made franco warehouse and if a retailer desires ex-factory prices, an allowance for the delivery charge included in franco rate would be considered. Experience shows, however, that retailers always accept franco warehouse prices.

The foregoing statements could hardly be considered to establish that the increase, if it was actually made, was in the amount of 15 percent. Obviously, it would have been something less than 15 percent, considering the differing delivery bases involved.

However, in defendant's exhibit A, dated some 3 months later, another vice consul, in reporting additional information, quoted the identical pricelist as governing the sales of the mats involved, but made no mention of the 15 percent addition in the case of retailers, and reported that—

* * * According to Mr. van Vloten, *all sales* during the period January through April 1952 of both of these types of rubber mats on the domestic market *were made in accordance with this price list.* [Italics added.]

During the course of the trial, counsel agreed that the conditions set forth in the reports of the vice consuls represented conditions as existing at or prior to the time of exportation of this merchandise.

I am of the opinion that, with respect to the issue as limited by the parties, plaintiff established a *prima facie* case in favor of its contention that the merchandise was freely offered for sale for home consumption, without the 15 percent addition, and that the evidence

offered by the defendant not only fails to carry the burden of going forward and establishing otherwise, but, in some respects, may be considered to corroborate the evidence offered by the plaintiff.

The motion made by counsel for the defendant at the conclusion of plaintiff's case to dismiss appeal is, therefore, denied.

On the record before me, I find as facts:

(1) That the merchandise involved herein consisted of rubber floormats, exported from the Netherlands on June 30, 1951.

(2) That, at the time of exportation of the said merchandise, the market value or the price at which such merchandise was freely offered for sale for home consumption to all purchasers in the principal market of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the entered value.

(3) That, at the time of exportation of the said merchandise, such or similar merchandise was not sold or freely offered for sale in the principal market of the country of exportation for exportation to the United States.

I conclude as matters of law:

(1) That the correct basis for determining the value of the merchandise at bar is foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, and

(2) That such value was the entered value.