(Reap. Dec. 10832)

BRUCE DUNCAN CO., INC., A/C VANDENBERG L. MEAD ENTERPRISES, ET AL. *v.* UNITED STATES

Entry No. 16299, etc.

(Decided October 13, 1964)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *Morris Braverman*, trial attorneys), for the defendant.

RICHARDSON, Judge: The merchandise involved in these cases, consolidated at the trial, consists of spectacle frames, exported from West Germany during the period from September 22, 1956, through January 16, 1958. Although some of the invoices include other merchandise, such as sunglasses, lenses, spare parts, and pliers, the appeals for reappraisement are limited to spectacle frames. They were entered and appraised as follows:

| Reap. No. | Entered | Appraised |
|---|---|---|
| R59/254 | At unit invoice values, plus 25% | As entered |
| 296071–A | At unit invoice values | At unit invoice values, plus 25% |
| R58/1353 | At unit invoice values, plus 25% | As entered |
| R58/1790 | At unit invoice values, plus 25% | As entered |

Counsel for the respective parties stated at the trial that the proper basis of valuation of the spectacle frames is the export value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Plaintiffs claim that the unit invoice values represent such export value, whereas defendant contends that the appraised values are correct.

In support of their claim, plaintiffs introduced into evidence two affidavits of Clemens Maienrieder, sales manager of the Optische Werke G. Rodenstock, Munich, West Germany, manufacturer of the imported spectacle frames. In the first of these, dated January 17, 1962 (plaintiffs' exhibit 1), the affiant states that he has held the position of sales manager since 1946; that one of his duties is to decide on prices and conditions of sale for all markets, including exportation to the United States, and that he is thoroughly familiar with the prices and conditions of sale in effect from September 1956, to date. According to the affidavit, from September 1, 1956, to February 1, 1958, his firm offered and sold spectacle frames to the purchasers for exportation to the United States in wholesale quantities, a number of sales being made to Vandenberg L. Mead Enterprises of Beverly Hills, Calif.; Felix Mendelson, San Francisco, Calif.; and Omega Instrument Co. and John Tworoger at New York. The affiant states further that during that period all sales made to the United States in the ordinary course of the firm's regular business were made in wholesale quantities at list prices, less 20 percent discount, and that at infrequent intervals, a few sales were made at list prices. Five sales at list prices to purchasers in Puerto Rico and one to a purchaser in Florida were enumerated. The affidavit continues:

That these sales at list prices were not made in the ordinary course of our trade, because we normally supplied only merchandise to those firms who usually and continuously bought at wholesale quantities.

That during the period indicated above, September 1, 1956 to February 1, 1958, our spectacle frames were offered and sold in the usual course of our trade to purchasers in wholesale quantities at list prices less 20% discount; that during the period in question, the majority of our sales made to the United States were made at list prices less 20% discount, as shown in the attached table.

That the total value of our sales to the United States during the above period at list prices less 20% discount amounted to about U.S. $64,200, while the total value of our sporadic sales at list prices to purchasers in Puerto Rico amounted to only U.S. $790.

The second affidavit, dated July 25, 1962 (plaintiffs' collective exhibit 2), contains a list of sales of spectacle frames and sunglasses for exportation to the United States from September 1, 1956, to February 1, 1958. This shows sales in quantities of 1 to 25, 26 to 50, 51 to 75, 76 to 100, and 101 to 2,000. Three sales at list prices were in quantities of 51 to 75 and one sale each in quantities of 1 to 25 and 26 to 50. Sales at list prices, less 20 percent, were made in all quantities, the largest

number being in quantities of 76 to 100 and 101 to 2,000. Neither of the affidavits gives any prices, and no pricelists have been offered in evidence.

Plaintiffs claim in their brief that the invoice unit values are equivalent to the list prices, less 20 percent, and that the appraised values are equivalent to the list prices, net. It is further contended that this merchandise was freely offered and sold in the usual wholesale quantities and in the ordinary course of trade to all purchasers for exportation to the United States at the unit invoice prices which were equivalent to the list prices, less 20 percent, and that sales made at list prices involved only a minor portion of the merchandise sold for exportation and were not in the usual wholesale quantities nor in the ordinary course of trade.

The defendant claims that the merchandise was appraised at the unit invoice values, plus 25 percent, to equal the freely offered price to all purchasers in the ordinary course of trade and in the usual wholesale quantities; that the evidence fails to establish any list prices or list prices, less 20 percent, at which the merchandise is supposed to have been sold; that the allegation that sales at list prices were not made in the ordinary course of trade is a conclusion unsupported by evidentiary facts; and that the plaintiffs have not proven any price for any quantity by competent evidence and, therefore, have failed to overcome the presumption of correctness attaching to the appraised values.

It is well settled that the plaintiff in a reappraisement proceeding has the double burden of proving the action of the appraiser erroneous and of establishing the correct dutiable value of the merchandise. *G. & H. Transport Co., Inc. (Philip Wirth)* v. *United States*, 27 CCPA 159, C.A.D. 78; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. He must meet every material issue in the case and establish every element of value in strict compliance with the statute; otherwise, the appraised values must stand. *Kobe Import Co.* v. *United States, supra; United States* v. *Fisher Scientific Company*, 40 CCPA 164, C.A.D. 513; *Brooks Paper Company* v. *United States*, 40 CCPA 38 C.A.D. 495. Under certain circumstances, the importer may challenge one item in an appraisement while relying upon the presumption of correctness attaching to all the other items. *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371; *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 CCPA 243, C.A.D. 558. This may be done only when the challenged items do not bring into question the balance of the appraisement. *United States* v. *Dan Brechner, etc.*, 38 Cust. Ct. 719, A.R.D. 71; *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778.

In the instant case plaintiffs' burden is to prove the price at which the merchandise was freely offered for sale to all purchasers in the principal markets of West Germany in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States. Although not so stated, it is apparently plaintiffs' theory that only the addition of 25 percent to the unit invoice values is challenged and that they are not required to establish the other elements of value. This presupposes, however, that the parties are in agreement that the invoice unit values are equivalent to the list prices, less 20 percent. In such cases it has been held that the issue is whether or not the addition is proper. *D.C. Andrews & Co., Inc.* v. *United States*, 39 Cust. Ct. 647, Reap. Dec. 8993, affirmed *sub nomine*, *United States* v. *D.C. Andrews & Co., Inc.*, 42 Cust. Ct. 690, A.R.D. 97; *The American Import Co.* v. *United States*, 34 Cust. Ct. 444, Reap. Dec. 8388.

In *The American Import* case, *supra*, the issue was limited by stipulation to the question of whether the 10 percent addition made by the appraiser to the invoiced and entered values was correct and plaintiff was not required to prove the correctness of any other item or element of value.

In the *D. C. Andrews* case, *supra*, the merchandise was appraised in Netherlands guilders (or Dutch florins) at 3.20 each, plus 15 percent, less 2 percent, plus cost of packing. Plaintiff claimed the correct value was Dutch florins 3.20, plus 4 percent turnover tax, plus packing. The court noted that the parties had treated the issue as involving only the question of whether or not the item of 15 percent, added by the appraiser to the 3.20 florin price, was properly part of the value of the merchandise. An affidavit and pricelist were offered in evidence, the affidavit stating that the prices were based on the quantities purchased and that sales and offers were made on the basis of the pricelist. The court stated (pp. 649–650):

> In the brief filed on behalf of the defendant, plaintiff's exhibit 1 is attacked as containing "no competent probative evidence of value," and the cases of *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, and *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593, are cited, among others, with respect to the distinction between evidentiary and ultimate facts.

> If the parties had not limited the issue, as they seem to have done, to the sole question of the propriety of the 15 percent addition, it is quite possible that plaintiff's exhibit 1 might be said to contain statements of ultimate fact, rather than evidentiary facts. Those statements, however, refer to matters which do not seem to be in issue.

> The statements quoted above, however, as related to the issue as outlined by counsel for the parties, viz, whether retailers, as a class, were required to pay 15 percent more than the pricelist price, are statements of evidentiary fact from which the court may find the ultimate fact, i.e., whether or not such merchandise was freely offered for sale *to all purchasers* in the usual wholesale

quantities at the pricelist price of D. Fl. 3.20 each, *without the addition of 15 percent.* * * * There is no issue as to whether the merchandise was "freely" offered—both sides tacitly admit this by their contentions—or of usual wholesale quantities or the pricelist price, which are shown to be the same by the evidence of both parties. [Italics quoted.]

In the instant case the parties have not limited the issue to the addition of the 25 percent by the appraiser and there is no evidence of the pricelist prices. Such prices are necessary in order to determine whether the appraised values are correct and if not to find the values at which the merchandise was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade. Although the appraiser may have found value by disallowing the 20 percent discount and appraising at the list prices, it may be that he found value without regard to any list prices but on the basis of information available to him as to sales made to all purchasers in the usual wholesale quantities and in the ordinary course of trade. The court may not infer that he did the former rather than the latter, nor may the court infer that the invoice unit values are the list prices, less 20 percent, nor that the merchandise was freely offered to all purchasers at the unit invoice prices. *United States* v. *Manahan Chemical Co., Inc.*, 24 CCPA 53, 62, T.D. 48333.

Furthermore, nowhere in the affidavit, plaintiffs' exhibit 1, is it stated that the manufacturer offered and sold its spectacle frames to *all* purchasers at any price. In the third paragraph, it is stated that "our company offered and sold spectacle frames of its manufacture to *the* purchasers for exportation to the United States in wholesale quantities." Four purchasers are named. The next paragraph states that "all sales made to the United States in the ordinary course of our regular business were made in wholesale quantities at list prices less 20% discount," and that a few sales were made at list prices. Reference is made to five sales to Puerto Rico and one to Florida. It is then stated:

That these sales at list prices were not made in the ordinary course of *our* trade, because we normally supplied *only merchandise to those firms who usually and continuously bought at wholesale quantities.* [Italics supplied.]

The next paragraphs state that a majority of the sales to the United States were made at list prices, less 20 percent discount, the total value of the sales being $64,200, whereas the value of the sales to Puerto Rico was $790. The list of sales in plaintiffs' collective exhibit 2 covers spectacle frames and sunglasses, without separating the two. It does not contain the names of the purchasers or the prices of the merchandise.

From this it appears that the spectacle frames were offered at list prices, less 20 percent, to firms which *usually* and *continuously* bought at wholesale quantities and to others at list prices. There is no indi-

cation that any of the sales at list prices were not in wholesale quantities, nor that the price varied with the quantity. The evidence presented does not overcome the presumption of correctness attaching to the appraiser's valuation nor establish that the merchandise was freely offered to *all* purchasers at a different value, to wit, list prices, less 20 percent. *Adolph Goldmark & Sons Corp.* v. *United States*, 22 CCPA 358, T.D. 47378; *D. N. & E. Walter & Co.* v. *United States*, 38 Cust. Ct. 634, Reap. Dec. 8790; *Milton L. Mintzer* v. *United States*, 48 Cust. Ct. 616, Reap. Dec. 10223.

In the *Goldmark* case, the court pointed out (p. 361):

> * * * In the case at bar it is clearly shown that everyone could not receive the 7½ per centum discount unless they were in a position to buy in certain large quantities regularly. One could not buy even a very large quantity and get the 7½ per centum discount unless such orders came regularly. This, we think, was a restriction upon the sales so as not to bring the sales price within the language of said section 402(c), *supra*. * * *

In *D. N. & E. Walter & Co.* v. *United States*, *supra*, the court stated (p. 636):

> The statute, section 402(d), *supra*, calls for "the price * * * at which such or similar merchandise is freely offered for sale to all purchasers," that is to say, it contemplates that offers will be made to "all purchasers," i.e., all those who cared to buy such goods in wholesale quantities in the market (*United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, T.D. 48308). Such offers to all who might care to buy, of course, could conceivably result in the sale of the entire available quantity to one purchaser, but it seems clear that, to be within the terms of the statute, there must be an offer to the buying public, no matter what the result of the offer may be.

Even if a very large percentage of the sales were made at list prices, less 20 percent, that fact would not establish such prices as the dutiable export value under the statute. It is proper to consider only the prices at which the merchandise is freely offered to *all* purchasers. *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129. The term "all purchasers" does not mean 99 percent of the purchasers of such goods, but all who cared to buy. *United States* v. *American Glanzstoff Corp.*, 24 CCPA 35, T.D. 48308. In the instant case, there were some who cared to buy who did not receive the discount.

Since plaintiffs have established neither the list prices nor that the merchandise was freely offered to *all* purchasers at the prices claimed to represent export value, they have not met their burden of proof and the appraised values must stand.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of spectacle frames, exported from West Germany during the period from September 22, 1956, through January 16, 1958.

2. That in reappraisement No. 296071-A the merchandise was entered at the unit invoice values and was appraised at the unit

invoice values, plus 25 percent. That in the other cases the merchandise was entered and appraised at the unit invoice values, plus 25 percent.

3. That appraisement was made on the basis of export value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and that counsel for the respective parties have agreed that that is the proper basis of evaluation.

4. That there is evidence that the manufacturer offered and sold spectacle frames to firms which usually and continuously bought at wholesale quantities at list prices, less 20 percent, and that sales in wholesale quantities to others had been made at list prices.

5. That, although plaintiffs claim that the invoice unit values are equivalent to the list prices, plus 20 percent, no pricelists or other evidence of such list prices have been presented in support of the claim.

I conclude as matters of law:

1. That plaintiffs have failed to overcome the presumption of correctness attaching to the appraised values.

2. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise herein.

3. That such values are the appraised values.

Judgment will be rendered accordingly.