W. X. HUBER CO., A/C D. A. HOLM, INC., ET AL. *v.* UNITED STATES

No. 7982.—

Entry Nos. 8551; 758117, etc.; 1439, etc.

First Division, Appellate Term

(Decided April 10, 1951)

*Lawrence, Tuttle & Harper* (*Lawrence A. Harper, Charles J. Evans,* and *George R. Tuttle* of counsel) for the appellants.

*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster,* special attorneys), for the appellee.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: This is an application for review of the decision and judgment of Cline, J., reported in 19 Cust. Ct. 284, Reap. Dec. 7430, holding foreign value, as defined in section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), to be the proper basis of value of certain earthenware glazed tiles exported from England on various dates between October 2, 1937, and March 30, 1941, and that such value as to each item is the appraised value. The appeals for reappraisement involved are listed in the attached schedule "A."

The tiles were manufactured and exported by H. & R. Johnson, Ltd., of England, and entered (except as noted below) at the invoice prices, which are claimed by the importers (plaintiffs below, appellants here) to represent export value as defined in section 402 (d) of the Tariff Act of 1930. They were appraised on the basis of foreign value. In reappraisement 140441–A, the merchandise was entered under duress at a higher value, and was appraised as entered.

It is the contention of the importer-appellants that no foreign value for the merchandise existed for the reason that neither the identical tile nor any tile similar thereto was sold or freely offered for sale in England during the period of exportation of the involved tile, either for home consumption in England or for export to countries other than the United States. (It should be stated parenthetically that certain of the tile involved was imported prior to the effective date of the Customs Administrative Act of 1938 when the definition of foreign value was not limited, as it was by that act, to sales and offers for sale for home consumption in the country of exportation.)

The importer-appellants' contention in this regard is based upon evidence offered by them tending to establish that the imported tile was inferior to that sold or freely offered for sale in England either for home consumption or for exportation to countries other than the United States for the reason that it consisted of run-of-the-kiln, or unselected, tile, whereas only graded, or selected, tile was sold or offered for sale in England for home consumption or for exportation to countries other than the United States.

It appears that in the manufacture of tile certain defects or faults, such as warpage, lack of even shade or color, etc., occur. It is the importer-appellants' contention that graded tile consists of tile from which varying amounts, according to the grade, of defective or faulty tiles have been eliminated, and that the range of qualities from highest to lowest depended upon the degree of freedom from such defects or faults shown in the particular selection, while run-of-the-kiln tile consisted of tile as it was manufactured with only extreme defects or faults thrown out.

In support of their contentions the plaintiffs below offered the affidavit of W. E. Sergeant, the commercial and sales manager of the manufacturer and exporter, which was received in evidence without objection as exhibit 3. After detailing his experience in the manufacture and sale of tile and his familiarity with the shipments here involved, Mr. Sergeant stated in paragraphs numbered (9), (10), (11), (12), (13), and (14) as follows:

(9) That up to the present time English tile manufacturers have generally supplied only three grades or qualities, viz., Commercial, Seconds, and Thirds; that H. & R. Johnson Ltd., offered during the period covered by the sales to Donald A. Holm, Inc., referred to above, and at the present offers the following grades or qualities for home consumption and export to countries other than the United States viz., Best, Commercial, Seconds and Thirds; that during the said period, the only quality offered and actually sold for export to the United States was STANDARD EXPORT QUALITY, described in paragraph 12 hereof; that differences in quality are accounted for by the defects which accrue in the course of manufacture; that said grades or qualities are as follows:

a) *Best Quality.* That this is a superfine selection seldom used by English Manufacturers, and that not one per cent of the export sales are made in this quality;

b) *Commercial Quality.* That this is a high selection excluding certain faults, and reasonable consistency in squareness, freedom from warping and even shade and color; that approximately 50 per cent of the sales of affiant's concern are in this quality;

c) *Seconds Quality.* That this is composed of tiles with defects in the course of manufacture such as faults on the face, slightly warped or crooked and approximate in shade; that about 40 per cent of the sales of affiant's concern are in this quality;

d) *Thirds Quality.* That this consists of tile with similar faults as in Seconds Quality but to a more accentuated degree, and this grade represents about 10 per cent of the sales of affiant's concern.

(10) That some markets take Best only, some take Commercial only, others Seconds, others Thirds, and United States of America takes Standard only; that the qualities differ in price and are not commercially interchangeable;

(11) That none of the sales to Donald A. Holm, Inc. consisted of tile in any of the foregoing grades or qualities;

(12) That due to the peculiar demands of the United States market, certain tile, as is hereinbelow more specifically set forth, had to be made specially for said market, which tile could not be sold in Great Britain or for export to other countries; that as a result it was necessary to require that the American purchaser take the *run-of-the-kiln*, excluding only "pitchers" and bad faults which are afterwards broken and not offered for sale; this enables H. & R. Johnson, Ltd., to dispose of practically all of the tile manufactured, without the cost of selection, and enables it to offer said tile at the prices reflected in the invoices to Donald A. Holm, Inc.; that this quality is known as Standard Export Quality, and is not offered by any other English manufacturer and is a term of selection not recognised by the Association;

(13) That all of the tile sold to Donald A. Holm, Inc. in 6 x ½" dimensions, with invoice designations of HIPW, HIP, K, L and HIPZ, and hereinafter referred to as "liners", are manufactured solely for export to the United States; that these "liners" have no demand in Great Britain or in any of our other export markets as this size and class of decoration are not used in said markets; that said "liners" must necessarily be sold in Standard Export Quality, that is, the purchaser must take the *run-of-the-kiln*, as it is impossible to utilize any surplus for sale in any of our other markets;

(14) That I personally know that said "liners" have no market in the home trade or for export to countries other than the United States, as I have on many occasions endeavoured to promote sales of said "liners" in such markets but without success, and only a few isolated sales resulted; that said sales were of insignificant quantities and were made only in the Best Quality, and were not sales made in the ordinary course of trade; that representatives of the United States Treasury Department stationed in London have visited the H. & R. Johnson Ltd.'s factory and have inspected said sales invoices, and have advised me that such sales were of no consequence; that it is a fact, that if I could have or could now successfully introduce this merchandise into any other market, I would have been and am now willing to offer said merchandise freely to all purchasers at the same prices, qualities and quantities as have been and are now offered and sold to Donald A. Holm, Inc.;

The evidence contained in the affidavit as aforesaid is corroborated by the testimony of Donald A. Holm, secretary-treasurer of the actual importer, D. A. Holm, Inc. It is Mr. Holm's testimony that the tile here involved is kiln-run or unselected tile as opposed to graded or selected tile; that kiln-run tile is subject to a considerable content of imperfect tile, being more or less in different shipments, but that his firm had to take it and pay for it; that in the shipments involved there was "a lot of this stuff" that could not be sold and had to be thrown away, and that when considerable portions were found to be bad, his firm had to segregate the tile and sell some of it at a discount.

Opposed to the evidence offered by the plaintiffs below, however, is evidence offered by the Government in the form of reports of Treasury

representatives, the testimony of trade witnesses, and certain documents and other exhibits tending to establish (1) that the English grade known as "Commercial" was the same as the "Standard Export Quality" or "run-of-the-kiln," and (2) that the tile imported was selected tile.

Even if it be assumed that by the evidence offered in their behalf the importers established, *prima facie*, at the conclusion of their case, that the tiles sold in the foreign market for home consumption or for exportation to countries other than the United States were graded or selected tiles and that the tiles sold for exportation to the United States and here involved were run-of-the-kiln or unselected tile, we think an examination of the evidence offered by the defendant is convincing that the trial court committed no error in the admission and consideration of the same, and that the conclusion reached by it was warranted.

None of the Treasury representatives' reports, collective exhibits 4 and 5, and exhibit 15, give any description such as that given by Mr. Sergeant in his affidavit, exhibit 3, of the various qualities or grades of tile. However, in collective exhibits 4 and 5 the Treasury representatives indicate that the terms "Commercial" and "Standard" are used interchangeably, and in collective exhibit 4 Treasury Representative Rawlyns indicates that "Commercial" quality is called "run of the kiln" also.

In his affidavit, exhibit 3, Mr. Sergeant states that—

\* \* \* the only quality offered and actually sold for export to the United States was Standard Export Quality, described in paragraph 12 hereof; \* \* \*

Unless, as the Treasury representatives indicated, "Commercial" and "Standard" qualities were the same, this statement of Mr. Sergeant seems to be directly controverted by an exhibit marked "B" which is attached to collective exhibit 4, the report of Treasury Representative Rawlyns. Exhibit "B" is a price list typed on stationery with the printed name "H. & R. Johnson, Ltd." in the upper left-hand corner. The heading in typewriting is as follows:

> U. S. A. PRICE-LIST        January, 1938
> Prices F. O. B. Liverpool
> Commercial Quality

Exhibit "B" is identified in the report, collective exhibit 4, as follows:

There is transmitted herewith as Exhibit "B" a typewritten copy of the manufacturer's list of prices for export to the United States, dated January, 1938, as furnished to R. S. Dick & Co. [The manufacturer's agent in the United States.]

The trial court pointed out that this list is for "Commercial Quality," and it was obviously furnished by the exporter, on whose stationery it is written. This is, of course, inconsistent with the statements of Mr. Sergeant in his affidavit, exhibit 3.

The statements made in paragraphs numbered (13) and (14) of Mr. Sergeant's affidavit, exhibit 3, concerning the 6″ x ½″ tiles, known as "liners," being manufactured solely for export to the United States and sold only in a few isolated instances in the "Best" grade in the home market, are controverted by the fact that such tiles appear in catalogs marked exhibit "E" attached to the Treasury representative's report, collective exhibit 4, which were stated to be circularized to all purchasers in the home market, and a list contained in the said report, collective exhibit 4, showing 13 sales in the month of September 1937 and 34 sales in the period from September to December 1938, of such tiles in both "Best" and "Commercial" grades.

It will thus be seen that the statements made in the affidavit, exhibit 3, have to a considerable extent been controverted by the reports of the Treasury representatives. We find no error in the action of the trial court in giving weight to the evidence contained in the Treasury representatives' reports and the exhibits attached thereto and referred to therein, with resulting impairment of the probative force of the statements made in the affidavit, exhibit 3.

Certain testimonial, documentary, and real evidence was received over the objection of counsel for the importers bearing upon the "American Standard" and "American Second" qualities of tiles, which were shown to be grade designations applied to tiles manufactured in the United States. While this evidence does not bear directly upon the grading of tiles manufactured in England, nevertheless, when considered in its entirety, it does tend to establish that the tile here involved was graded, and not unselected, tile.

Thus, it has been shown by the defendant's evidence that the "American Standard" grade of tile was a "best quality" and selected tile. Exhibits 17 and 18, offered by the defendant, consist of photostatic copies of contracts made by the importer with American purchasers for delivery of "H. & R. Johnson's standard decorative liners," or "H. & R. Johnson's standard grade liners" shipped, according to the contracts, "From England direct to New York." It must be remembered that these were American transactions and the use of the word "standard" or "standard grade" would indicate grading according to American standards and call for a selected tile, rather than unselected tile.

Further, exhibit 20, a price list issued by the actual importer, indicates on its face that the shipments of H. & R. Johnson's tile were standardized "* * * to a grade fully meeting the qualifications of 'Standard Grade' * * *."

We find no error in the action of the trial court in admitting and considering such evidence, and are of the opinion that the conclusion reached by the trial court was fully warranted by the evidence before it.

At the original hearing, preliminary to the introduction of evidence, counsel for the plaintiffs and defendant stipulated that—

* * * if the court finds there is no foreign market value, and that export value is the proper basis of appraisement then the invoice value represents the correct dutiable export value. (R. p. 2.)

This establishes that export value, if it existed, was lower than the foreign value.

We therefore find as facts:

(1) That the merchandise consists of earthenware glazed tiles in various designs exported from England on various dates between October 2, 1937, and March 30, 1941.

(2) That at the time of exportation of the involved merchandise such or similar merchandise was freely offered for sale to all purchasers in the principal markets of England, both for home consumption and for export to countries other than the United States, in the usual wholesale quantities and in the ordinary course of trade.

(3) That the price, at the time of exportation of the involved merchandise at which such or similar merchandise was so freely offered for sale, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the value returned by the appraiser as to each item.

(4) That if, at the time of exportation of the involved merchandise, such or similar merchandise was freely offered for sale for exportation to the United States to all purchasers in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade, the price at which such or similar merchandise was so freely offered for sale was the invoice value as to each item.

We conclude as matters of law:

(1) That the proper basis of value for the merchandise involved is foreign value, as defined in section 402 (c) of the Tariff Act of 1930, or as defined in the said section as amended by section 8 of the Customs Administrative Act of 1938, depending upon whether the particular importation was made prior or subsequent to the effective date of the said act.

(2) That the said value in each case is the appraised value.

Judgment will therefore issue affirming the judgment of the trial court accordingly.