(Reap. Dec. 9817)

JOSEPH TANOUS *v.* UNITED STATES

Entry No. 74.

(Decided October 20, 1960)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector* and *Sheila N. Ziff*, trial attorneys), for the defendant.

JOHNSON, Judge: This is an appeal for reappraisement of bubble chewing gum, imported from Mexico on February 27, 1947. It was entered at 6.50 Mexican pesos per 100 tablets, plus stamp tax, and was appraised at 8 Mexican pesos per 100 tablets, net, packed, plus 1.65 per centum Mexican stamp tax. It is claimed that the merchandise was freely offered in the home market for domestic consumption and for export to the United States at 6.50 Mexican pesos per 100 tablets, plus 1.65 per centum Mexican stamp tax, as entered.

At the trial, Joseph Tanous, the plaintiff herein, testified as follows: In 1947, he imported bubble chewing gum having the brand name "Chiclines" from Chiclera Industrial Mexicana, S.A., of Mexico City. It was not manufactured especially for him and was made according to a standard bubble gum formula used by practically all manufacturers throughout the world. He was familiar with market conditions in Mexico relating to gum manufacture as he had been engaged in dealing in a similar product since January 1943. Prior to January 31, 1947, he had had an oral agreement with the manufacturers for the purchase of the merchandise at 6.50 pesos per 100 tablets. On January 31, 1947, after a month of discussion, a written contract was entered into between the plaintiff and the manufacturers. According to the plaintiff, this contract was never put into effect, and a second oral agreement was made thereafter, under which the plaintiff continued to purchase the product at 6.50 pesos per 100 tablets. He imported this bubble gum from February to August 1947 and the price to him remained stationary.

The written contract, with two translations thereof, was received in evidence as defendant's collective exhibit A and plaintiff's exhibit 1. It is dated January 31, 1947, and was executed by Joseph Tanous, representing the Tanous Chicle Co., the buyer, and Pastor Bautista G., representing Chiclera Industrial Mexicana, S.A., and Armando Medina Alonzo, representing himself and Impulsora Agricola Industrial, S.A., the sellers. It provided that the sellers would manufacture chewing gum of the qualities and types specified and would sell it to the buyer exclusively, except for chewing gum destined for consumption in Mexico, and 50 tons which could be sold to the Pan American Supply Co. of Mexico, and partly processed chicle which might be sold to Cuban purchasers. The contract further provided:

SECOND.—For the processing of the products which the sellers will sell exclusively to the buyer, the latter will advance the sums that in each case shall be fixed by mutual accord. The sums which result charged to the sellers and in credit of the buyer because of these advances, shall begin to be redeemed by the

buyer, until they have sold the buyer a minimum of one hundred tons of the product. Said advances shall be paid, when the time arrives, by means of deductions on the amount of the sales that the sellers will make to the buyer up to the sum of $1.50 (one peso and 50/100 M. N. Mexican) for each kilogram of the product delivered.

Mr. Tanous testified that, at or prior to the signing of the contract, he advanced $50,000 to the manufacturers, which was given to Pastor Bautista, an attorney representing Chiclera Industrial Mexicana, under his guaranty that the money would be secure. Thereafter, Mr. Tanous accepted purchases against this advance and eventually recovered the $50,000 in merchandise on the basis of 6.50 pesos per 100 pieces.

As to the cancellation of the contract, Mr. Tanous testified variously as follows:

That it was cancelled in writing, but he did not have a copy of the writing. (R. 13.)

That it was cancelled within a month. (R. 15.)

That a letter was sent to the factory cancelling this agreement at their request; that it was not cancelled in June or July 1947. (R. 16.)

That it may have been cancelled the first week in March (R. 19) ; that it was cancelled in February or March, but he could not say whether it was later than March 31. (R. 20.)

That the sellers wanted the contract cancelled for their own protection because they had already started making offers to sell the gum in the United States at 6.50 per 100 pieces. (R. 22.)

That the sellers wanted an advance of $100,000, which was the basis of the difficulty. (R. 23.)

That the contract existed as to many things, including the price of 6.50 pesos per hundred. (R. 23.)

That it was never in effect on a commercial basis. (R. 24.)

That the sellers agreed with the purchaser that the terms of the contract could not be adhered to because of plaintiff's failure to put up an additional $50,000 for which reason the sellers wanted freedom to sell their merchandise wherever they could. (R. 25.)

That the second oral agreement was made shortly after the contract was signed, possibly five days or so. (R. 32.)

Mr. Tanous testified that he had definite personal knowledge that the merchandise was freely offered and sold extensively in Mexico; that he had access to the books and records of the manufacturers and found that sales were made in Mexico for home consumption at prices varying from 6 pesos to 6.50 pesos per 100 tablets; and that the price did not vary according to the quantity purchased. He also said that the manufacturers offered this gum for export to purchasers other than himself; that he had seen letters which were sent by the factory requesting wholesalers and jobbers in the United States to enter into

commercial relations with the Mexican company; that the price at which the merchandise was offered was 6.50 pesos per 100.

Nicholas Alejandro Mata, called as a witness for the plaintiff, testified that, from February to the latter part of July 1947, he was employed by the plaintiff to check whether the bubble gum manufactured by Chiclera Industrial Mexicana was made according to the formula and to check the shipments to the plaintiff. He observed the ingredients used in the manufacture of the gum and noted that Mexican sugar as well as Cuban sugar was used. He also noted that not all the gum manufactured was shipped to Mr. Tanous.

There was received in evidence, as plaintiff's exhibit 2, an affidavit of Pastor Bautista G., executed June 16, 1958, in which the affiant states that he was a party to the contract between the manufacturers and the plaintiff and that he participated in the negotiations leading up to it. He states, further, that the contract was never complied with because plaintiff failed to deposit with the manufacturers the full sum they desired; that it had been agreed that plaintiff would deposit $100,000 but that only $50,000 was deposited; that, therefore, the contract was not adhered to, and the parties dealt with each other on the basis of an oral understanding other than the terms of the written contract. According to the affiant, who said he was familiar with the method of doing business by the manufacturers, bubble gum made according to the same formula was freely offered and sold to all purchasers in Mexico for home consumption at 6 pesos and/or 6.50 pesos per kilo during the period from February 1 to June 30, 1947. The affidavit continues:

That while in the written contract hereinabove referred to, the manufacturers had agreed to limit their sales for export to the United States to Joseph Tanous, that provision of said contract, like other terms of the contract, was not adhered to, and the sellers and manufacturers did in fact offer and sell their products for export to the United States as well as for home consumption. That subsequently, in the manufacture of gum to the United States, other labels than the Chiclera brand labels used on the exportations to Joseph Tanous, were used by the manufacturers but that the product was in fact the same.

That the price did not vary according to quantity and that said bubble chewing gum was sold and freely offered for sale in Mexico City to all purchasers who cared to buy, for home consumption, or for export to the United States, whenever quantities of gum were available, at 6.50 Mexican pesos per kilo.

Defendant offered in evidence a report of Treasury Representative W. W. Fraser, dated July 21, 1947 (exhibit B). According to this report, the Treasury representative, on June 19 and 23, 1947, visited the offices of Chiclera Industrial Mexicana, S.A., and Impulsora Agricola Industrial, S.A., interviewed Armando Medina A., the director general of said companies, and made an inspection of the regular books of account and other records of said firms. While the two companies are separate and distinct organizations under Mexican law, they are

housed under the same roof and use the same machinery. Mr. Medina told the Treasury representative that his companies had a contract with the plaintiff and that it had been filed in accordance with Mexican law on February 11, 1947; that, under the terms of the contract, the manufacturers were not free to sell the "Chiclines" brand of bubble gum to anyone other than the Tanous Chicle Co.; that Mr. Tanous had agreed to the sale on May 6, 1947, of 120,000 tablets to a firm in San Francisco, which intended to export the merchandise to Hawaii; that this sale was made at the price of 6.50 pesos per hundred; that this was the only sale of "Chiclines" gum made to anyone other than the Tanous Chicle Co. The report continues:

Mr. Medina said that he is considering taking legal steps to break the contract with Tanous Chicle Company because Tanous is unable or unwilling to take several tons of the Chiclines brand gum which was manufactured for him as called for in the second clause of the contract and for failure to pay for shipments already made.

According to the report, Mr. Medina stated that bubble chewing gum identical to the "Chiclines" brand was being produced under the name of "Scout"; that no sales had been made but that it had been offered during May and June 1947 for sale export to the United States to various firms at differing prices and terms of sale.

The report lists the deliveries of bubble chewing gum made to Tanous Chicle Co. from February through May 1947 at 6.50 pesos per 100 tablets or per kilo, and also lists representative sales for home consumption at prices ranging from 6 to 7.50 pesos per 100 tablets, the majority being at 6.50 pesos, only three sales being over that amount.

There was also received in evidence a record of Mr. Tanous' answers to questions put to him by the appraiser at Laredo on April 16, 1947 (defendant's exhibit C). Mr. Tanous stated, among other things, that the merchandise was purchased in the open market; that he had an oral agreement whereby he advanced the manufacturer $50,000 to purchase materials, which would be repaid with merchandise; and that the seller was at liberty to sell to all purchasers for exportation to the United States.

At the conclusion of the trial, it was stipulated by counsel that the merchandise had been appraised at 8 pesos per 100 pieces, plus 1.65 per centum Mexican stamp tax, on the basis of the export value of similar merchandise, to wit, Ace brand bubble chewing gum, manufactured by a company, Hercipe, in Monterrey, Nuevo Leon, Mexico.

By statute (section 501 of the Tariff Act of 1930, 28 U.S.C. § 2633) the value found by the appraiser is presumed to be the value of the merchandise, and the burden rests upon the party challenging its correctness to prove otherwise. Plaintiff is, therefore, required to produce competent evidence sufficient not only to overcome the pre-

sumption of correctness attaching to the appraiser's valuation but also to establish affirmatively the proper value of the merchandise. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *H. S. Dorf & Co., Inc.* v. *United States*, 41 C.C.P.A. (Customs) 183, C.A.D. 548; *United States* v. *Fisher Scientific Co.*, 44 C.C.P.A. (Customs) 122, C.A.D. 648.

Paragraph 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, in effect at the time this merchandise was entered, provides that the value of imported merchandise shall be the foreign value or the export value, whichever is higher, and defines said values as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff claims that the record presented establishes that, at the time of exportation, bubble chewing gum *such* as that at bar was freely offered for sale and actually sold in the principal market of Mexico City, both for home consumption and for exportation to the United States, in any quantity to all purchasers, at 6.50 pesos per 100 tablets.

The testimony of the plaintiff, the affidavit of Pastor Bautista, and the report of the Treasury representative establish that such bubble chewing gum was freely offered to all purchasers for home consumption in Mexico at prices ranging from 6 to 6.50 pesos per 100 tablets. The sales listed in the report indicate that the price was generally 6.50 pesos per 100 tablets. This evidence is sufficient to establish that the *foreign* value of *such* merchandise is 6.50 pesos per 100 tablets, as claimed by plaintiff.

Defendant's position, however, is that while there is no *export* value for *such merchandise*, there is an export value for *similar* merchandise higher than the foreign value, and that that value must prevail.

In *Pan-American Plywood Co.* v. *United States*, 43 Cust. Ct. 614, A.R.D. 112, it was held that where foreign value and export value are

in competition, the value of similar merchandise in one category is to be preferred over the value of such merchandise in the other, where the former is higher. The court pointed out:

* * * If, for purposes of analysis, the respective definitions of foreign value and export value are substituted in subdivision (1) [of section 402], *supra*, for the words "foreign value" and "export value" therein contained, the answer becomes almost self-evident. Neither value is determinable unless and until all of the conditions expressed within the confines of its definition are satisfied. Each value as a separate category, must be found in accordance with the terms prescribed. If "such" merchandise be freely offered for sale to all purchasers in the usual wholesale quantity and in the ordinary course of trade, settled precepts dictate that the terms of the definition have been met, *United States* v. *Meadows Wye & Co., Inc.* (*F. A. MacCluer, Inc.*), 15 Ct. Cust. Appls. 451, T.D. 42643; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714; if there be no "such," but "similar" merchandise is so offered for sale, then it is from similar merchandise that the value is to be derived. The result obtained, however, is not the value of "such" merchandise nor the value of "similar" merchandise, but the foreign value, or the export value, as the case may be, of the *imported* merchandise, and the higher of the two must be taken. Hence, it is of no significance that one value is found from the free offerings of "similar" merchandise while the other is arrived at by considering "such" merchandise. [Italics quoted.]

Since the merchandise herein was appraised on the basis of the price at which *similar* merchandise was freely offered to all purchasers for exportation to the United States, in order to prevail, plaintiff must establish that there was an export value for *such* merchandise which was no higher than the foreign value or that the appraiser's finding of export value based on the prices of similar merchandise was erroneous.

The record establishes that a written agreement was entered into by the plaintiff and the manufacturers on January 31, 1947, in accordance with which the manufacturers were required to sell their product exclusively to the plaintiff, except for sales for home consumption and certain other sales not here pertinent. Under this contract, no export value can be found, since said value must be the price at which the merchandise is freely offered to all purchasers, not to one exclusive purchaser. *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80, C.A.D. 129; *D. N. & E. Walter & Co.* v. *United States*, 38 Cust. Ct. 634, Reap. Dec. 8790.

Plaintiff contends, however, that the contract was never adhered to and was canceled. On this point, plaintiff's testimony is not convincing. He admitted that the contract existed as to many things, including the price. He did not produce any writing canceling the contract. He stated variously that a new oral contract was entered into within a few days after the written contract was signed; that the contract was canceled within a month; that it was canceled the first week in March; that it was canceled in February or March; that he

could not state whether it had been canceled in April. On the other hand, Mr. Medina stated in June to the Treasury representative that he was contemplating taking legal steps to rescind the contract. There is no evidence, other than unsupported statements of plaintiff and of Pastor Bautista, that any offers or sales for export were made to anyone other than the plaintiff prior to May 1947. The merchandise involved in this case was exported from Mexico on February 27, 1947. The weight of the evidence indicates that the contract had not been canceled at that time.

Even if it be assumed that the contract had been canceled or had never become operative, the evidence is insufficient to establish an export value for *such* merchandise at the time of exportation of the chewing gum involved herein. The affidavit of Pastor Bautista states that bubble gum manufactured by the sellers according to the same formula used for the manufacture of bubble gum sold to the plaintiff was freely offered for sale to all purchasers for home consumption or for export, whenever quantities of gum were available, at 6.50 Mexican pesos per kilo. The plaintiff testified that he knew the manufacturer offered the gum to others for export because he had "seen letters that were sent out by the factory requesting wholesalers and jobbers in the United States to enter into commercial relations with the company in Mexico" and offering the merchandise at 6.50 Mexican pesos per 100 tablets. Neither witness identified a single actual sale or offer for sale at or about the time of exportation of this merchandise. Their bare statements of conclusions do not constitute substantial evidence sufficient to establish an export value different from that found by the appraiser. *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705. Furthermore, while the report of the Treasury representative lists the sales of this chewing gum for home consumption in Mexico and the shipments to Mr. Tanous, no other sales for export are mentioned except the one to a firm in San Francisco, which was said to have been made with plaintiff's permission. Offers of another brand of chewing gum, said to be identical, are listed, but these did not occur until May 1947 and are not at 6.50 Mexican pesos per 100 tablets, but are at varying prices and terms of sale. The record presented thus supports the conclusion that such merchandise was not freely offered to all purchasers for exportation to the United States on or about the date of exportation of this merchandise. Therefore, no export value for such merchandise can be found.

Plaintiff's claim, that the "appraisement of the merchandise at bar on the basis of a different product, Ace Brand gum, manufactured and sold at Monterrey, a different principal market in Mexico, by Chicles Hercip, a different manufacturer, and not offered or sold in the same principal market in the country of exportation as the merchandise un-

der appraisement herein" is improper, is untenable. It is presumed that the appraiser found every fact to exist that was necessary to sustain his appraisement. *White Lamb Finlay, Inc.* v. *United States*, 29 C.C.P.A. (Customs) 199, C.A.D. 192. Thus, it is presumed that the appraiser found similarity and that the similar merchandise was freely offered to all purchasers in the principal markets of Mexico in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at the appraised value. There is no evidence that the merchandise was not similar; in fact, plaintiff testified that bubble chewing gum was manufactured according to a standard formula used by practically all manufacturers throughout the world. There is no evidence that it was not freely offered for sale in the principal markets of Mexico. It was stipulated that it was manufactured in Monterrey, but there is no evidence as to where it was offered for sale. Presumably, therefore, it was offered for sale in the principal markets of Mexico. There is no evidence that it was not freely offered at the appraised value, 8 Mexican pesos per 100 tablets, net, packed, plus 1.65 per centum Mexican stamp tax.

On the record presented, I find as facts:

1. That the imported merchandise consists of "Chiclines" brand bubble chewing gum, manufactured by Chiclera Industrial Mexicana, S.A., exported from Mexico on or about February 24, 1947.

2. That such merchandise was entered at 6.50 Mexican pesos per 100 tablets, plus stamp tax, and was appraised at 8 Mexican pesos per 100 tablets, net, packed, plus 1.65 per centum Mexican stamp tax.

3. That the appraisement was made on the basis of the price of similar merchandise, "Ace" brand bubble chewing gum, manufactured by Hercipe in Monterrey, Nuevo Leon, Mexico.

4. That such merchandise was freely offered for sale for home consumption in Mexico to all purchasers in the principal markets of Mexico, in the usual wholesale quantities and in the ordinary course of trade, at 6.50 Mexican pesos per 100 tablets.

5. That such merchandise was not freely offered for sale to all purchasers in the principal markets of Mexico, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at or about the time of exportation of the instant merchandise.

6. That similar merchandise was freely offered for sale to all purchasers in the principal markets of Mexico, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at or about the time of exportation of the instant merchandise, at the appraised value, 8 Mexican pesos per 100 tablets, net, packed, plus 1.65 per centum Mexican stamp tax.

I conclude as matters of law:

1.   That the export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise involved herein.

2.   That such value is the appraised value, 8 Mexican pesos per 100 tablets, net, packed, plus 1.65 per centum Mexican stamp tax.

Judgment will be rendered accordingly.