UNITED STATES *v.* JOSEPH TANOUS (No. 5168)[1] *

United States Court of Customs and Patent Appeals, July 21, 1966

*John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Glenn E. Harris* for the United States

*Stein and Shostak (Marjorie M. Shostak,* of counsel) for appellee.

[Oral argument April 5, 1966 by Mr. Harris and Miss Shostak]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Associate Judges

MARTIN, Judge, delivered the opinion of the court:

 This appeal is from the judgment of the First Division, Appellate Term of the United States Customs Court (52 Cust. Ct. 595, A.R.D. 164). The case involves the reappraisement of "Chiclines" brand bubble chewing gum purchased from Chiclera Industrial Mexicana, S.A. (Chiclera), and Impulsora Agricola Industrial, S.A. (Impulsora), of Mexico City, by Joseph Tanous, the importer. The bubble gum was invoiced and entered at Laredo, Texas, on February 28, 1947 at 6.50 pesos per 100 tablets (or per kilo), net, packed, F.O.B., Mexico City (hereinafter referred to as 6.50).[2] However, the gum was appraised at 8 pesos for the aforesaid unit and the Government below stipulated that value represented the *export* value of *similar* merchandise, "Ace" brand bubble chewing gum manufactured by Hercip, S.A., in Monterey, Nuevo Leone, Mexico.

Section 402(a)(1) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 which was in effect at the time the merchandise was entered, provides that the value of imported merchandise shall be "the foreign value or the export value, whichever is higher." Section 402(c) provides:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, * * *.

Section 402(d) provides:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal market of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * *.

---

[2] An additional 1.65 per centum Mexican stamp tax is not involved in this appeal.

Since this court is restricted to a review of questions of law, we will not detail the evidence already adequately reported in the three decisions below. The trial court in its initial decision in this case, 45 Cust. Ct. 522, R.D. 9817, held, insofar as is pertinent here, that the evidence was sufficient to establish that the *foreign* value of *such* merchandise is 6.50 pesos, as claimed by appellee. It was also held that the weight of the evidence indicates that a written contract by which the manufacturers were required to sell their product exclusively to the appellee was in force, not having been canceled and superceded by an oral agreement at the time, as alleged by the appellee. Because of the contract there could be no price at which *such* merchandise could be freely offered to all purchasers for *export* to the United States. Thus no *export* value of *such* merchandise under section 402(d) was established, and the assessed *export* value of *similar* merchandise, section 402(c), being higher, governed since section 501 of the Tariff Act of 1930 provides, in pertinent part, that:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The trial court held alternatively that even if the contract be assumed to be canceled, the evidence was insufficient to establish an *export* value for *such* merchandise.

Additional evidence was submitted on rehearing that the trial court (50 Cust. Ct. 379, R.D. 10439) held showed the "Ace" brand of bubble gum "could not properly be used as a basis of appraisement, since it was not freely offered to all purchasers for exportation to the United States * * *." However, the importer was held not to have sustained his burden of proving a value for the merchandise other than the value presumed by authority of section 501 to be correct. The trial court on rehearing stated the burden this way:

* * * it is incumbent upon plaintiff [appellee] to establish that there was an export value for *such* merchandise and what that export value was. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. * * *

The entire body of evidence was reassessed with the same conclusions as to the non-cancellation of the contract as were reached in the initial decision.

The Appellate Term reversed, holding that the additional proof, establishing no export value for the "Ace" gum, satisfied the importer's burden:

* * * When competent evidence to that effect was introduced by the plaintiff at the trial, the Government could no longer rely upon the presumption of correctness of its appraisement. If it relied upon such appraisal after the introduction of the evidence referred to by the plaintiff, the defendant should have gone forward with proof. The presumption of correctness attaching to the Government's appraisal stood only so long as there was no competent evidence introduced to

refute or overcome the presumption. Once such evidence was introduced, the Government lost the protection of the presumption and faced the necessity of offering evidence in support of its appraisal, if it continued to rely upon it.

\* \* \* \* \* \* \*

\* \* \* We are of the opinion that it was not required, as indicated by the Government, that the appellant make inquiry of all other gum manufacturers in Mexico, if any existed, to determine whether there was an export value for any similar product. That is unreasonable and really an impossible burden to cast upon the plaintiff below. If the Government contended for an export value of similar merchandise other than that based upon "Ace" gum, it should have offered proof to that effect. We are, therefore, of the opinion that the judgment of the trial court should be reversed and that appraisal should have been based upon the foreign value of such merchandise, there being no higher export value for such merchandise.

The Appellate Term, in arriving at that conclusion, distinguished the *Kobe* case on what we consider to be proper grounds. In our view, there is no issue relating to foreign value that is open to our review in this case. Also, there are no contentions that the definitions of section 401 (f), 19 USC 1401 (f) are or are not applicable or satisfied.

We note here that in assessing the evidence the Appellate Term found as facts:

7. That the evidence presented established the nonexistence of an export value for either such or similar merchandise which was higher than the foreign value.

It is the Government's view that:

\* \* \* the First Division, Appellate Term, erred in holding that appellee was under no burden, aside from "Ace" bubble gum, to establish that there was no higher export value for merchandise "similar" to the imported bubble gum.

It is contended by the Government that the statutorily imposed dual burden of proving that the appraised value is erroneous and that the claimed value represents the correct dutiable value is not satisfied:

\* \* \* by a mere showing that the appraiser's choice of "similar" merchandise did not in fact meet the statutory requirements where the record discloses the existence of other "similar" merchandise which might.

Thus the Government would have appellee, after showing that the "Ace" brand bubble gum could not properly be used as a basis of appraisement, also show that "Paris" and "Calvert" brands, mentioned in passing by certain affiants, do not provide an export value for similar merchandise.

On the facts of this case, we think the Appellate Term incorrect in holding the burden does not extend that far, but hold that error to be harmless in view of the conclusion of the Appellate Term, supported by substantial evidence, that appellee has met that burden.

In this review it is beyond question that the basis for the appraised value has been proved erroneous, and appellant does not con-

tend otherwise. Appellee's burden of then proving the correct dutiable value extends to both export and foreign value in view of section 402(a)(1) requiring a choice between "whichever is higher."

The statutory language of sections 402 (a), (c), and (d) of the Tariff Act of 1930, as amended, supra, requires that a determination be made as to the presence *or absence* of foreign and export value in order to ascertain the dutiable value of imported merchandise. Each value must be determined independently of the other, and each separately considered as to both such or similar merchandise. Once the two values as defined in the statute are determined, *or the absence of one of them*, the selection of the higher value, *or the existent value*, is mandatory. *Meadows, Wye & Co.*, v. *United States*, 17 CCPA 36, T.D. 43324; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714.

Within the confines of each definition, it is necessary to determine first whether there is a value for *such* merchandise; in the absence of a value for *such* merchandise, which conforms to the statutory requirements, it is then necessary to determine whether there is a value for *similar* merchandise. *Meadows, Wye & Co.*, supra. When a *foreign* value for *such* merchandise has been determined, and when an *export* value for *such* merchandise cannot be found, but an *export* value does exist for *similar* merchandise, the latter being higher in value, the *export* value of *similar* merchandise prevails as the proper dutiable value, the comparison required by statute being made between foreign and export value and not between such and similar merchandise. *Pan-American Plywood Co.* v. *United States*, 43 Cust. Ct. 614, A.R.D. 112; *International Forwarding Co.* v. *United States*, 34 Cust. Ct. 540, A.R.D. 56. To ignore an export value based on similar merchandise where one exists and there is none as to such merchandise would defeat the requirement of the statute.

The Government contests the finding by the trial judge that a foreign value of 6.50 pesos for *such* merchandise was proved and asks that we not put our "stamp of approval" on that finding. However, that finding of fact is beyond our review, and that contention made for the first time in this court is belated.

Appellee contended before the trial judge that there existed an export value for such merchandise, but was unable so to prove. Substantial evidence in the record shows that there is an absence of an export value for such merchandise, or as the Appellate Term found as a fact: "the evidence presented established the nonexistence of an export value for * * * such * * * merchandise which was higher than the foreign value." In the absence of an export value for such merchandise, recourse to similar merchandise must be had to establish export value. In the absence of the latter, the foreign value as the

entered value would prevail where the assessed value is shown erroneous.

We think the Appellate Term's finding number 7, supra, of the non-existence of an export value for similar merchandise which was higher than the foreign value, is supported by substantial evidence to the degree necessary for appellee to make out a prima facie case of proper dutiable value.

It would appear at first blush that the burden on appellee to prove an export value, or absence thereof, for *similar* merchandise on the facts of this case would render the stipulation without binding effect. However, such effect is illusory and occasioned by the fact that "Ace" is but one brand of several gums comprising *similar* merchandise, and the stipulation was to "Ace" only. Testimony of record indicates all the bubble gums in Mexico are produced according to a standard formula. Originating with different manufacturers, the bubble gums are thus similar rather than such merchandise. The basis of assessed valuation is not necessarily connected with the separate statutory inquiry required in ascertaining export value. It is only coincidental that here proofs concerning lack of a proper basis for the assessed valuation relate also to part of the proofs required under export value of similar merchandise.

The situation becomes clear if it is assumed that some unknown basis for appraisement which had been proved erroneous was used. Appellee must still, by the requirement of section 402(a)(1), prove whichever of export or foreign value is the higher value. If there is no export value as to such merchandise, then it must go on to similar. Here appellee's proofs as to foreign value of similar merchandise are simplified as he need not adduce proofs as to the similar "Ace" brand bubble gum, since that has been done in the first stage of its burden, proving the assessed valuation to be erroneous.

Appellee has adduced evidence as to *other similar* bubble gums, i.e. "Calvert" and "Paris" brands. The affidavit, submitted at rehearing, of Cipriano Garza Elizondo shows that all three, "Ace," "Calvert" and "Paris" brands were exported excluisvely to one party, thus there is no export value since not freely offered. Thus the Appellate Term did not err insofar as it found *generally* that "the evidence presented established the nonexistence of an export value for * * * similar merchandise which was higher than the foreign value." If the Government was of the view that there was *still other* bubble gum of *smiliar* nature then the burden shifted to it to assert such in support of an export value, as appellee's burden is satisfied by a reasonably representative selection of similar merchandise, which on this record appears to have been made. So far as the record shows, the named brands are all similar merchandise and the only bubble gum manufactured in Mexico.

Although we do not agree with the Appellate Term that the burden shifted upon proof as to "Ace" gum, we do think it shifted at the proofs of other similar gums, and that to require still more proofs would be a burden beyond the prima facie case appellee must establish. Although evidence of record pertaining to "Scout" brand gum, manufactured by Chiclera and Impulsora and differing solely in the name from "Chiclines," could be taken also to be *such* merchandise, the lower court's conclusion that the freely offered price of between 8.25 and 8.00 pesos did not establish an export value for such merchandise since the offers were made *at a different period* is supported by subported by substantial evidence.

Accordingly, the judgment of the Appellate Term is *affirmed*.

